## J. A. GOODWIN *v.* M. E. THOMPSON.

1. RIVERS. *Navigable. Soil below low water-mark.* The soil below low water-mark of the rivers of this State navigable in a legal sense, as well as the use of the stream for purposes of navigation, belongs to the public, and the title is vested in the State for the use of the public.

2. SAME. *Same. Same.* The title to the soil under the waters of such navigable streams cannot be acquired by individuals under our general land laws, and a grant thus obtained, which undertakes to include the bed of such a navigable stream, and to give the grantee the exclusive privilege of taking from the bed of the stream so included sand, gravel, and other deposits found therein, is to this extent void.

3. SAME. *Same. Same. Quere,* whether the Legislature, under our Constitution or upon general principles, can, by express grant, confer upon an individual the exclusive title to the soil under a navigable stream, especially after the Congress of the general government has undertaken to improve the navigability of the stream.

### FROM KNOX.

Appeal from the Chancery Court at Knoxville. W. B. STALEY, Ch.

TAYLOR & HOOD for complainant.

HOOD & TAYLOR for defendant.

COOPER, J., delivered the opinion of the court.

Action commenced before a justice of the peace, "for taking five loads of sand from the lands of plaintiff," and tried in the circuit court upon an agreed statement of facts. The trial judge rendered a judg-

ment in favor of the plaintiff for a part of the sand sued for. Both parties appealed in error.

The defendant holds land, under a grant from the State of North Carolina, lying on both the French Broad and Tennessee or Holston Rivers near their junction. The grant calls for the bank of the river at the point of junction of the two streams, thence up the south bank of the French Broad river with its meanders for the distance of half a mile, thence, after one or two calls, to the Tennessee or Holston river, thence up said river with its meanders to the beginning corner. Part of the sand was taken from the beds of both rivers, in front of the land thus bounded, between low water mark and the center of the stream. Another part was taken from the bed of the French Broad river between the center of the stream and the low water mark of the north bank, being the bank of the stream opposite to that called for by the defendant's grant, and the judgment of the circuit court was for that part of the sand so taken. The plaintiff claims under a junior grant from the State of Tennessee, issued in 1870, for about 7,000 acres, which covers the bed and both banks of the French Broad and Tennessee rivers where the sand was taken, and in express terms grants to the plaintiff the exclusive privilege of taking from the bed of said streams, within the boundaries of the grant, sand, gravel, and other deposits found therein. The agreed facts show that both rivers are navigable in a legal sense above and below the lands covered by the grants, and that the United States government has been for

years, under acts of Congress, expending money on both streams, above and below the lands granted, for the purpose of improving the navigation.

Our courts, while adhering to the rule of the common law that the owners of the banks of streams not navigable in a legal sense take title to the center of the water, subject to the public easement for purposes of navigation, have adopted the civil law as to streams navigable in a legal sense, and held that the call in a grant for such a river, or for a point on its bank, and thence up or down with its meanders, carries title at most only to low water mark, the soil covered by the water, as well as the use of the stream for the purpose of navigation, belonging to, and remaining in, the public: *Elder* v. *Burrus,* 6 Hum., 98; *Martin* v. *Nance,* 3 Head, 649; *Stewart* v. *Clark,* 2 Swan, 10; *Posey* v. *James,* 7 Lea, 98. Under these rulings, it is clear that the defendant has no title to the soil under the rivers called for by his grant below low water mark. And the only question raised by the agreed facts is whether the complainant's grant gives him any better right. That grant not only covers the two rivers, but expressly undertakes to give the grantee the exclusive privilege of taking from the beds of those streams, within its boundaries, " sand, gravel and other deposits found therein."

By the civil law, which we have adopted, the soil of a navigable stream covered by the water, as well as the use of the stream, belongs to the public. The title claimed by the plaintiff in this case to the

beds of the two rivers, as well as his claim to the sand, gravel and deposits in the streams, is, of course, incompatible with the title of the public to the soil under the water. It is upon him to show that he has acquired the title of the public in some legal mode which divested that title out of the public and vested it in him. If it be conceded that the Legislature, as the representative of the State, has the power to pass the title of the public to the plaintiff, he does not claim that the Legislature has directly, by a legislative enactment, clothed him with the title. The agreed statement of facts shows that he merely obtained a grant, based upon regular survey and entry, under our general land laws. And the first point to be considered is, whether our general land laws admit of such a grant.

By the common law, the title to the soil under the waters, where the tide ebbs and flows, as well as the use of the waters, was vested in the sovereign for the public use: Hale *de juremaris*, chap. 3; *Warren* v. *Matthews*, 6 Mod., 73. The sovereign might, it seems, make grants of these waters, *e. g.*, for the purpose of a fishery, subject to the use of the public for navigation: *The Royal Fishery of the River Boyne*, Davies' Rep., 149. It is probable, as has been held by the Supreme Court of Mississippi, that the common law doctrine was borrowed from the law of nations, tidal waters being public highways for all nations, over which, consequently, the State only could hold title or exercise control: *Steamboat Magnolia* v. *Marshall*, 39 Miss., 109. The idea of the sovereign, as an individual, having any property right

Goodwin *v.* Thompson.

in such waters has no doubt ceased to be entertained in England, and can hardly be said to have ever been recognized in this country. The almost universal doctrine in this country now is, that the State, in the case of land bounded by the sea, or an arm of the sea, holds the fee in trust for the public; 3 Wash. Real Prop., 359. "The civil and common law," he adds, "substantially concur in this respect, with the exception that, by the former, the seashore extended to the highest winter tide, whereas by the latter it is limited to the ordinary high water line." In the case of the lands originally held by the colonial government of Massachusetts, the government stood in two relations to its subjects, one as owner of the land to be granted to purchasers and settlers, to be held in severalty in fee, the other a prerogative right to the sea and seashore, in a fiduciary relation for the public use: *Commonwealth* v. *Roxbury*, 9 Gray, 492. And this seems to be the attitude of those States, in the matter of its public lands, in which the civil law has been adopted in regard to navigable streams. They hold the land to be granted to purchasers and settlers in fee, and the soil under its navigable waters, as well as the use of those waters, in a fiduciary relation for the public use. The presumption would be that the State only intended to exercise the former power in their general land laws, designed to enable the citizen to acquire title to a specific part of the public domain in severalty, and exclusively, free from all public use. The point was raised before the Supreme Court of the United States, under similar acts

of Congress, and Mr. Justice Clifford, who delivered the opinion of the court, seemed inclined to take that view, but the court preferred to put the decision upon the ground that the acts of Congress making provision. for the survey and sale of public lands reserve the rights of the public to the navigable streams: *Railroad Company* v. *Schurmeir*, 7 Wall., 272. The act of Congress relied on provided: "That all navigable rivers within the territory to be disposed of shall be deemed to be and remain public highways; and in all cases where the opposite banks of any stream, not navigable, shall belong to different persons, the stream and the bed thereof shall be common to both." Mr. Meigs, in his argument in *Elder* v. *Burrus*, 6 Hum., 359, makes the same claim for our land laws, citing the laws, some of which do provide that when a survey is made on any navigable water, the water shall form one side of the survey. Be this as it may, we know that the Legislature of this State has always been studiously careful of the rights of the public to the use of its navigable streams, frequently enacting that certain streams were navigable which, perhaps, scarcely deserved the honor. And our courts have settled as the common law of the State that the soil under the waters of navigable streams, as well as the use of the waters, belongs to the public. This was said in a case in which one of the grants covered the stream and both banks, and would, in the opinion of the judge, have given to the grantee an island in the river, if the river had been navigable in a legal sense: *Stuart* v. *Clark*, 2 Swan, 10. The

idea of this eminent judge manifestly was, that even if the lines of a grant crossed a navigable stream so as to include a part of the river bed, all that the grantee could claim would be both banks, and any island in the river to low water mark, the bed of the river between the low water mark still belonging to the public. There is an expression of opinion to the contrary by Judge Crabb in *Roberts* v. *Cunningham*, M. & Y., 67. But this intimation was made at a time when the great weight of authority was that navigable waters were limited to the ebb and flow of the tide. We think that the public use of our navigable rivers imperatively requires that the soil under the water should be in the State in trust for the public; that the title to the soil under such streams was not intended to be secured by individuals under our general land laws; and that any person setting up a claim thereto must be able to show an express legislative grant.

This conclusion renders it unnecessary to determine whether the Legislature, under our Constitution, or upon general principles, could confer upon any individual or individuals a several and exclusive title to such property. "Navigable waters," says Judge Cooley, "are for the use of all the citizens, and there cannot lawfully be any exclusive private appropriation of any portion of them": Cooley Const. Lim., 736, citing a number of cases. The conclusion also renders it unnecessary to consider the effect of the acts of Congress, making appropriations to improve the navigability of these streams, upon the right of the State to make

any grant which would give to individuals a right to interfere with the bed of the stream.

The judgment of the circuit court will be reversed, and a judgment rendered here in favor of the defendant against the plaintiff for the costs of the cause.